In re **FLORENCE TANNERS, INC.,** **Sami and Sana Yousif, Debtors.**

**Bankruptcy Nos. 94–52306–R, 94–52307–R.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Sept. 17, 1997.

Louis P. Rochkind, Detroit, MI, for Halbert.

John Hertzberg, Southfield, MI, for Debtors.

## OPINION

STEVEN W. RHODES, Chief Judge.

These two cases are before the Court on cross-motions for summary judgment on the fee applications of the debtors' attorney, Todd Halbert. In a previous opinion on these motions, the Court found that Halbert had failed to comply with applicable disclosure requirements, had a conflict of interest, and had taken fees without court approval. *In re Florence Tanners, Inc.*, 209 B.R. 439 (Bankr.E.D.Mich.1997). However, before ruling on sanctions, the Court ordered the parties to submit further briefs. Those briefs have now been filed and the matter is ready for disposition. For the reasons stated herein, Halbert's motions for summary judgment are denied, the debtors' motions are granted, and Halbert's fee applications are denied in full.

### I.

In its prior opinion, the Court found that Halbert did not comply with the fee agreement and payment disclosure requirements of Fed. R. Bankr.P.2016(b) in several respects:

1. His disclosure in the *Tanners* case suggests that his fee agreement is for a flat fee of $25,000, when in fact his fee agreement is for an hourly fee, and the hourly rates are not disclosed. 209 B.R. at 442–3.

2. His disclosure in *Tanners* suggests that he had been paid a fee of $26,600, when in fact this was a retainer and therefore property of the estate. 209 B.R. at 443. *See In re Downs*, 103 F.3d 472, 478 (6th Cir. 1996); *In re Doors & More. Inc.*, 127 B.R. 1001, 1002 (Bankr.E.D.Mich.1991).

3. His disclosure in *Tanners* suggests that the $25,000 fee agreement is the only agreement regarding fees, when in fact there were previous agreements under which Tanners agreed to pay for legal services in contemplation of bankruptcy. 209 B.R. at 443.

4. His disclosure in *Tanners* suggests that $26,600 was the only money he received for services in contemplation of bankruptcy, when in fact he received as much as $11,-

977.50 for such services.[1] 209 B.R. at 443–44.

5. He totally failed to disclose ten payments to him for fees after the petition was filed, totalling $78,468.92. 209 B.R. at 444.

The Court also found that Halbert did not comply with the disclosure requirements of Rule 2014(a) by failing to disclose pre-petition payments that are potentially recoverable preferences. 209 B.R. at 448. These payments were in the form of transfers to him of Tanners merchandise (leather coats) with a retail value of $17,665.

The Court further found that a conflict of interest resulted from Halbert's receipt of payments from Tanners during the pre-petition preference period. 209 B.R. at 446–48.

Finally, the Court found that Halbert took fees after the petition was filed, in violation of the order approving his employment, which contained a specific provision requiring court approval before taking fees, and in violation of the processes set forth in 11 U.S.C. § 330(a) and in the confirmed plan of reorganization. 209 B.R. at 450. These fee payments were from three sources: $26,600 from his retainer; $45,500 directly from Tanners; and, $6,868.92 from preference adversary proceeding recoveries. 209 B.R. at 449–50.

There remains the issue of sanctions for Halbert's conduct.

## II.

The recent case of *In re Downs*, 103 F.3d at 472, is most instructive. In that case, the debtors' attorney in their chapter 7 case became incapacitated. A creditor then paid attorney Friedman a $40,000 retainer to represent the debtors. Friedman filed an appearance in June of 1991, but did not disclose any information about the retainer. The bankruptcy court subsequently ordered Friedman to disclose the source of the retainer, which he did in June 1992. The bankruptcy court then imposed sanctions against Friedman for violating Bankruptcy Rule 2016, ordered disgorgement of the retainer, and barred all fees. Upon reconsideration, the bankruptcy court reduced the disgorge-

ment sanction from $40,000 to $20,000 and rescinded the fee bar. The district court affirmed.

On appeal, the court of appeals held:

Because the bankruptcy court is given a great deal of latitude in fashioning an appropriate sanction, *see [In re] Chapel Gate [Apartments]*, 64 B.R. [569] at 574 [(Bankr.N.D.Tex.1986)], the bankruptcy court's sanction of Friedman and Mapother should not be disturbed unless a clear abuse of discretion is found. *Arlan's Dep't Stores*, 615 F.2d at 943 (citing *Dickinson Industrial Site v. Cowan*, 309 U.S. 382, 389, 60 S.Ct. 595, 599, 84 L.Ed. 819 (1940)).

When a court metes out a sanction, it must exercise such power with restraint and discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991). The sanction levied must thus be commensurate with the egregiousness of the conduct. In cases involving an attorney's failure to disclose his fee arrangement under § 329 or Rule 2016, however, the courts have consistently denied all fees. *In re Futuronics Corp.*, 655 F.2d 463 (2d Cir.1981); *In re Arlan's Department Stores, Inc.*, 615 F.2d 925 (2d Cir.1979); *In re Fricker*, 131 B.R. 932, 939 (Bankr.E.D.Pa.1991); *Crimson Investments*, 109 B.R. 397; *In re Kero–Sun, Inc.*, 58 B.R. 770 (Bankr.D.Conn.1986).

103 F.3d at 478.

After reviewing the cases of *In re Futuronics Corp.*, 655 F.2d 463 (2d Cir.1981) and *Crimson Inv., N.V.*, 109 B.R. 397 (Bankr. D.Ariz.1989), the court of appeals stated:

In light of this precedent, we conclude that a complete denial of fees is the only appropriate sanction in the instant case. We are not faced with a simple "technical breach" of § 329 and Rule 2016 here. *Futuronics*, 655 F.2d at 471. Friedman acted affirmatively to conceal his fee arrangement with Heaven Hill and Bourbon–Aid during the § 2004 examinations of his clients and during the evidentiary hearings on remand. Friedman further refused to extricate himself from a patently obvious

---

**1.** The precise amount is difficult to specify due to the nature of the billings.

conflict of interest by continuing to make appearances on Hardscrabble's behalf in state court while representing the Downses in bankruptcy court. He also misled the trustee and SAIC regarding his withdrawal from the state proceedings. Only at the last possible instance, under pain of court order, did Friedman disclose the source of his retainer. Such conduct by its very essence constitutes a willful disregard of the fiduciary duties imposed by statute.

In reducing the amount of sanctions, however, the bankruptcy court relied on a 16–factor test set forth in *In re Omega Trust*, 110 B.R. 665 (Bankr.S.D.N.Y.1990). J.A. at 1751. After applying this test, the bankruptcy court concluded that "its original award was too harsh." *Id.* While we recognize the court's duty to fashion a sanction that is not unduly burdensome, we also believe that the bankruptcy court erred in reducing the sanction here. Section 329 and Rule 2016 are fundamentally rooted in the fiduciary relationship between attorneys and the courts. Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts. Friedman, by his conduct in these proceedings, demonstrated a "callous disregard" for those duties. Under these circumstances, we believe that the bankruptcy court abused its discretion in allowing Friedman and Mapother to retain any fees. *Futuronics*, 655 F.2d at 471. For these reasons, we reverse the district court's decision with regard to the amount of sanctions imposed.

103 F.3d at 479–80.

Similarly, in *In re Lewis*, 113 F.3d 1040 (9th Cir.1997), the court of appeals affirmed an order requiring the debtor's attorney to disgorge $37,000 in fees for making false and misleading fee agreement and payment disclosures under Rules 2014(a) and 2016(b). The court held that while in some circumstances the bankruptcy court should inquire into the reasonableness of the fees, the bankruptcy court is not necessarily required to do so, especially when the attorney acts with " 'complete disregard' for the procedures and requirements of the Bankruptcy Rules and

the Bankruptcy Code." *Id.* at 1046. The court stated:

> A bankruptcy court must be able to rely on the veracity of the representations made by an attorney in an application for employment. A bankruptcy court must be certain that an attorney who has filed a Rule 2016(b) statement will supplement that statement if further compensation is received.

*Id.* at 1045. *See also In re Prudhomme*, 43 F.3d 1000, 1003 (5th Cir.1995) (pattern of non-disclosure justifies disgorgement) *In re Park–Helena Corp.*, 63 F.3d 877, 882 (9th Cir.1995) (willful failure to disclose the source of a retainer justifies denial of all fees); *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 849 (10th Cir. BAP 1997) (failure to disclose retainer, even if inadvertent, sufficient basis to deny all fees).

■ Under this authority, the Court must deny Halbert's fee applications in these cases. The disrespect that Halbert has demonstrated for the disclosure requirements of the law, for this Court's orders, and for proper fee processes is extraordinary and unprecedented in the Court's experience. In every bankruptcy case, debtor's counsel must understand that matters of disclosure and payment of fees affect the administration of justice in bankruptcy cases in fundamental ways, and therefore must be addressed with the greatest seriousness, caution, and deliberation. The only proper response to the concerns raised here is denial of Halbert's fees.

## III.

■ As discussed in this Court's prior opinion, Halbert had a duty to disclose the pre-petition transfers of merchandise to him because they were potentially preferences. *Tanners*, 209 B.R. at 446. Halbert's violation of that disclosure obligation is by itself grounds to deny fees. *In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 316 (10th Cir.1994); *Rome v. Braunstein*, 19 F.3d 54, 59 (1st Cir.1994); *In re Micro–Time Management Systems, Inc.*, 102 B.R. 602, 606 (Bankr. E.D.Mich.1989).

## IV.

■ Halbert's receipt of those potentially preferential payments created a conflict of interest between Halbert's personal stake in protecting these payments and his duty as attorney for the debtor to recover all possible preferences. The authority and responsibility of the Court to deny fees on this basis is clear. Section 327(a) authorizes the employment of professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). If Halbert had disclosed the information regarding these transfers, the Court would not have approved the appointment of Halbert as attorney for the debtors. His appointment was therefore not valid under § 327(a), and, accordingly, his application for fees must be denied. *See In re Federated Dep't Stores, Inc.*, 44 F.3d 1310 (6th Cir.1995); *In re Eagle–Picher Indus., Inc.*, 999 F.2d 969 (6th Cir.1993); *In re Middleton Arms. Ltd. Partnership*, 934 F.2d 723 (6th Cir.1991); *see also Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941) ("Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.").

## V.

Halbert asserts four arguments in support of his position that the sanctions should be minimal in the circumstances:

A. The severity of the Opinion's conclusions is not supported by the factual findings, and the Opinion therefore overstates the need for sanctions;

B. The Court's legal conclusions state new law which will change longstanding custom in this District, and the Opinion should accordingly apply only prospectively;

C. The case law universally views Halbert's purported violations as "technical" breaches or otherwise of the sort which do not warrant substantial sanctions; and

D. The financial burden of retaining counsel, and the damage to Halbert's reputation and career by the publication of the Opinion, already represent punishment far more extreme than any reported decision would warrant.

Memorandum of Law Regarding Sanctions filed 6/25/97, pp. 1–2.

The Court concludes that none of these arguments provide any basis for awarding any fees in these cases.

### A.

The first argument—that the Court's previous opinion overstates its conclusions—is little more than an argument for reconsideration. However, the Court has found no error in its previous findings and conclusions and they are reaffirmed.

### . B.

■ Halbert next argues that the Opinion announces a new rule of law on fee disclosures, which, under *In re Federated Dep't Stores, Inc.*, 44 F.3d 1310 (6th Cir.1995), should be given only prospective application. The "new rule" that Halbert asserts is the conclusion in the previous opinion that "debtor's counsel must disclose in the attorney's affidavit of disinterestedness each payment received from the debtor within 90 days before the bankruptcy filing." *Tanners*, 209 B.R. at 448.

In *Federated*, the court of appeals concluded that a professional who is not disinterested cannot be appointed as a professional in a bankruptcy case under 11 U.S.C. § 327(a), and that it was error for a bankruptcy court to have approved the employment in such circumstances. The appellate court further held that a valid appointment under 11 U.S.C. § 327(a) is a condition precedent to awarding fees under 11 U.S.C. § 330(a). 44 F.3d at 1320. Nevertheless, as a matter of equity, because the professional had performed services based on the bankruptcy court's approval of the employment, the court of appeals allowed the fees earned through the date of the decision in *In re Middleton Arms Ltd. Partnership*, 934 F.2d 723 (6th Cir.1991), which first established the precedential authority by which the professional in *Federated* was disqualified.

This Court concludes that *Federated* provides no basis to award any fees to Halbert.

First, unlike Halbert, the professional in the *Federated* case made a full, complete and accurate disclosure of the facts giving rise to the issue of whether the employment should be approved under 11 U.S.C. § 327; the professional then rendered services based upon the bankruptcy court's (erroneous) approval of the employment. The rule has always been that any circumstances giving rise to an issue of disinterestedness must be disclosed. *See In re Interwest Bus. Equip., Inc.,* 23 F.3d 311; *Rome v. Braunstein,* 19 F.3d 54; *In re Micro–Time Management Systems, Inc.,* 102 B.R. 602. That Halbert did not realize that the payments he received were arguably preferences or that the receipt of preferences might create a disinterestedness issue does not suggest that the rule involved here is a "new" rule.

Second, unlike in the present case, the only problem with the award of the professional's fees in *Federated* was the professional's lack of disinterestedness. Here, Halbert's failure to disclose the potential preferences was only one of several problems. As noted, Halbert also failed to disclose his fee agreements and payments, took fee payments improperly post-petition, and had a conflict of interest. The Court's judgment whether to allow fees here must be based upon an evaluation of all of these circumstances.

### C.

Halbert's third argument—that his breaches were "technical"—borders on the frivolous. This opinion and the previous one firmly and unequivocally establish the importance of an attorney's obligations of disclosure and compliance with proper procedure in regard to fees. Halbert's breaches were substantial and pervasive.

### D.

Halbert's fourth argument—that he has already been punished enough—is also unsupported by case law. He has cited no authority suggesting that in determining whether to award him fees, the Court should consider the financial burden to him of retaining counsel or the damage to his reputation resulting from the publication of the first opinion. Indeed, the cases cited in this opinion suggest that when the breach is serious and willful, as here, such other considerations are foreclosed.

### VI.

The Court will enter an order denying Halbert's fee applications in these cases.