In re Robert J. FUTORAN, Debtor.

Robert J. FUTORAN, Appellant,

v.

Max H. RUSH, Trustee in Bankruptcy, Appellee.

No. 94–56158.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 12, 1995 *.

Decided Jan. 26, 1996.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

William Steckbauer, Fierstein & Sturman, Los Angeles, California, for appellant.

Marilyn Scheer, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, California, for appellee.

Before: FARRIS and RYMER, Circuit Judges, and SINGLETON, District Judge.**

FARRIS, Circuit Judge:

The issue in this case is whether a $290,000 payment to Dayle Futoran by her ex-husband Robert Futoran in exchange for the cancellation of their marital termination agreement was a preference recoverable by Max Rush, the Chapter 7 trustee of Robert's estate.

## BACKGROUND

The Futorans entered into a marital termination agreement that became effective on January 1, 1987. The husband agreed to pay the wife $6,000 per month until either the wife's remarriage, the death of either of the two, or May 24, 1995, whichever came first. On May 1, 1990, in exchange for the cancellation of this agreement, the husband paid the wife $290,000, an amount he derived by discounting the expected stream of future payments to present value. The husband acquired the $290,000 by selling partnership interests to Hernando Sanchez, a friend of his girlfriend, Margaret Thoma. On May 8, 1990, at the husband's request, the wife paid the $290,000 to Thoma, who in turn transferred it to Sanchez. The husband filed for bankruptcy protection on May 14, 1990.

On May 13, 1992, the trustee brought an adversary proceeding in the United States Bankruptcy Court for the Central District of California seeking recovery of the $290,000. The bankruptcy court ruled that the buy-out of the marital termination agreement was a preferential transfer recoverable by the trustee under 11 U.S.C. § 547. On appeal, the district court rejected the wife's contentions (1) that the husband's future spousal support obligations were not "antecedent

** Honorable James R. Singleton, United States District Judge for the District of Alaska, sitting by designation.

debt" under 11 U.S.C. § 547(b), (2) that the wife's transfer of the $290,000 to Thoma constituted "new value to or for the benefit" of the husband under 11 U.S.C. § 547(c), and (3) that the bankruptcy court should have exercised its equitable powers to prohibit recovery. We affirm.

## *DISCUSSION*

### I. *Antecedent Debt*

■ 11 U.S.C. § 547(b)(2) provides that "the trustee may avoid any transfer of an interest of the debtor in property ... for or on account of an antecedent debt owed by the debtor before such transfer was made." Although no case has considered the application of § 547(b)(2) to future spousal support obligations, in *In re Olson,* the bankruptcy court held that future child support obligations may be antecedent debt:

> This result springs from definitions.... "Debt" is defined as "liability on a claim." 11 U.S.C. § 101(11). "Claim is defined as "right to payment, whether or not such right is ... liquidated, unliquidated, ... matured, unmatured, disputed [or] undisputed...." 11 U.S.C. § 101(4). Thus, even Debtor's unmatured child support obligations may be considered an antecedent debt.

66 B.R. 687, 692 (Bankr.D.Minn.1986).

Cases that have considered the application § 547(b)(2) to the future obligations under an installment loan support this interpretation. They hold that debt is incurred when the loan is made and not when the payments become due. *See, e.g., In re Pippin,* 46 B.R. 281, 283 (Bankr.W.D.La.1984) ("the date on which a debtor executes a loan contract payable in installments, he also is and becomes legally bound to pay"); *In re Anders,* 20 B.R. 468, 469 (Bankr.M.D.Fla.1982) (same).

The husband became bound to make the monthly payments to the wife on January 1, 1987, more than three years prior to the transfer at issue. Although unmatured, the husband's future spousal support obligations were antecedent debt.

### II. *New Value*

■ 11 U.S.C. § 547(c)(4) provides that "[t]he trustee may not avoid ... a transfer

..., to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor." 11 U.S.C. § 547(a)(2) defines new value as "money or money's worth in goods, services, or new credit...." "The 'new value' defense is grounded in the principle that the transfer of new value to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of the other creditors." *In re Laguna Beach Motors, Inc.,* 148 B.R. 322, 324 (9th Cir. BAP 1992).

■ The district court found that the husband had (1) structured a series of transactions aimed at purging the estate of nonexempt assets and (2) prompted the wife to make a loan to a third party in furtherance of this plan, but that any part of the $290 thousand the husband received from the wife through Sanchez "was offset by the limited partnership interests transferred out of the estate." The record reflects that the transactions orchestrated by the husband and facilitated by the wife benefited the husband only to the extent that they helped him in his attempt to *deplete* his estate to the *detriment* of his other creditors. This is not "new value" as the Bankruptcy Code and *Laguna Beach* define it.

### III. *Equity*

■ Equitable considerations do not preclude recovery of the $290,000. The bankruptcy court's equitable powers may only be exercised "in furtherance of the goals of the Bankruptcy Code." *In re Bownic Insulation Contractors, Inc.,* 134 B.R. 261, 267 (Bankr.S.D.Ohio 1991); *Childress v. Middleton Arms Ltd. Partnership,* 934 F.2d 723, 725 (6th Cir.1991). The purpose of 11 U.S.C. § 547 is to "accomplish proportionate distribution of the debtor's assets among its creditors, and therefore to prevent a transfer to one creditor that would diminish the estate of the debtor that otherwise would be available for distribution to all." *Milchem, Inc. v. Fredman,* 902 F.2d 729, 733 (9th Cir.1990). Allowing the husband to prepay his obligation to the wife would thwart this goal by

depriving the husband's other creditors of their proportionate share of his estate.

AFFIRMED.