220 B.R. 739 (1998)
In re THE BENNETT FUNDING GROUP, INC., Debtor.
Richard C. BREEDEN, Trustee, Plaintiff-Appellee,
v.
L.I. BRIDGE FUND, L.L.C., Defendant-Appellant,
European American Bank, Defendant.
Bankruptcy No. 96-61376, BAP No. 97-50067, Adversary No. 96-70280A.
United States Bankruptcy Appellate Panel for the Second Circuit.
Argued March 20, 1998.
Decided May 18, 1998.
*740 Ronald M. Terenzi, Berkman, Henoch, Peterson & Peddy, P.C., Garden City, NJ, for L.I. Bridge Fund, L.L.C.
William T. Russell, Jr., Simpson, Thacher & Bartlett, New York City, for Richard C. Breeden.
Before: CONRAD, NINFO and GALLET, JJ.

OPINION
JOHN C. NINFO, II, Judge.
This appeal arises from the October 30, 1997 Memorandum  Decision, Findings of Fact, Conclusions of Law and Order of Chief Bankruptcy Judge Stephen D. Gerling of the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court Order"). The Order granted Richard C. Breeden, a Chapter 11 Trustee, (the "Trustee") partial summary judgment on his claim that a March 6, 1996 repayment of a loan to L.I. Bridge Fund (the "Lender") by The Bennett Funding Group, Inc. (the "Debtor") was a transfer on account of an antecedent debt owed by the Debtor before the payment was made, could be avoided by the Trustee pursuant to Section 547(b)[1], and could be recovered from the Lender pursuant to Section 550(a)(1). For the reasons set forth below, we AFFIRM the Bankruptcy Court Order permitting the avoidance and recovery of the repayment.
I. Facts
On February 20, 1996, the parties entered into a $5,000,000.00 Line of Credit Loan Agreement (the "Loan Agreement") and the Debtor executed a demand promissory note (the "Promissory Note") to evidence any borrowing under the Loan Agreement.
On February 27, 1996, the Debtor borrowed $1,200,000.00. On March 6, 1996 it repaid the loan with two separate checks that the Lender deposited on March 8, 1996: the first, in the amount of $1,200,000.00, to repay the outstanding principal borrowed, and the second, in the amount of $3,550.68, to pay accrued interest.
On March 29, 1996, the Debtor, along with three other related corporate entities, filed a voluntary Chapter 11 petition. On September 27, 1996, the Trustee commenced an Adversary Proceeding to avoid and recover the repayment.
In the Adversary Proceeding, the Lender alleged that the Debtor had agreed to repay the loan on March 6, 1996, even though: (1) the Loan Agreement specifically provided for the repayment of any borrowings only after sixty days notice from the Lender; and (2) the Lender could not produce any written evidence of this alleged agreement.[2]
II. Issue Presented
The sole issue presented by the parties on appeal is whether the Bankruptcy Court erred in finding that the Debtor's March 6, 1996 repayment was a transfer "on account of an antecedent debt owed by the debtor before such transfer was made" within the meaning of Section 547(b)(2).[3]
*741 III. Standard of Review
Rule 8013 of the Federal Rules of Bankruptcy Procedure determines this Panel's review of a bankruptcy judge's judgment, order or decree.[4] Accordingly, a bankruptcy court's findings of fact may not be set aside unless clearly erroneous, and a bankruptcy judge's legal conclusions are reviewed de novo. Maxwell Communication Corp. v. Societe Generale (In re Maxwell Communication Corp.), 93 F.3d 1036 (2d Cir.1996).
The granting of a motion for summary judgment is also reviewed de novo. Sierra Steel, Inc. v. S & S Steel Fabrication (In re Sierra Steel, Inc.), 96 B.R. 271, 273 (9th Cir. BAP 1989); Bender v. Tobman (In re Tobman), 107 B.R. 20, 22 (S.D.N.Y.1989).
IV. Discussion
We agree with the Bankruptcy Court that the prepetition repayment of a loan by a debtor, even if it is on or before the date when the parties otherwise agreed that the loan would be repaid, is a transfer for or on account of an antecedent debt owed by the debtor before the transfer was made within the meaning and intent of Section 547(b)(2). This is consistent with: (1) the decisions of the overwhelming majority of courts, including all of the Circuit Courts of Appeal that have interpreted Section 547(b)(2); (2) the policies underlying Section 547, as evidenced by the legislative history to the Section; and (3) statutory construction and interpretation.
A. Policy
By enacting Section 547 and empowering a trustee to avoid certain prepetition transfers of a debtor's property, Congress intended to: (1) discourage aggressive collection actions, by encouraging creditors to work with a financially troubled debtor so that a bankruptcy proceeding might be avoided; (2) prevent the diminishment of the assets of a financially troubled debtor to the detriment of similarly situated creditors; and (3) once a financially troubled debtor filed a bankruptcy proceeding, promote a fundamental principle of the Bankruptcy Code, equality of distribution among similarly situated creditors. See H.R. Rep. (1977), reprinted in 1978 Code Cong. & Admin. News 5787, 6138; and In re Western World Funding, Inc., 54 B.R. 470 (Bankr.D.Nev.1985).
By enacting Section 547(c), however, Congress excepted from avoidability a number of transfers which otherwise met the requirements of Section 547(b). These excepted transfers include certain transfers commonly referred to as having been made "in the ordinary course of business."[5] One of the transfers that Congress did not except from avoidability in Section 547(c), however, is the payment of a loan or indebtedness on or before its due date, although this is an important *742 factor which Courts consider in determining whether a transfer was made "in the ordinary course of business."
If we were to hold, as suggested by the Lender, that the prepetition repayment of an unsecured loan on or before the date it became due, whether by reason of maturity, demand or acceleration, is not "owed by the debtor at the time of the transfer", and, therefore, is not avoidable and recoverable as a preferential transfer, this would encourage certain actions by debtors and creditors contrary to the Congressional policies underlying Section 547.
Prepetition payments of unsecured loans by a financially troubled debtor for no current consideration, if not avoidable, would: (1) always diminish the assets of the estate available for distribution to other similarly situated creditors; (2) encourage the holders of such loans to take action to be repaid, such as by making a demand or declaring a default; and (3) deprive the debtor of working capital that it might need to avoid a bankruptcy proceeding.
Furthermore, such a holding could even encourage a financially troubled debtor who is inclined to repay guaranteed, nondischargeable or insider loans to the detriment of other similarly situated creditors to cooperate with the holders of such loans to do whatever is necessary to pay them on or before the due date so as to avoid the consequences of Section 547. As a result, the parties might enter into agreements to extend maturity dates, time the making of demands or even create events of defaults, all to insure that the debtor repays the loan on or before the "due date." See In re Western World Funding, Inc., 54 B.R. 470, 478.
B. Statutory Construction in Case Law
We believe that the common sense approach suggested by the Fourth Circuit Court of Appeals in In re Virginia-Carolina Fin. Corp., 954 F.2d 193, 197 (4th Cir.1992), should be utilized in determining both whether a loan repayment is "for or on account of an antecedent debt" and whether it is "owed by the debtor at the time of the transfer." This is exactly what the Court below did.
The case law is clear that for purposes of Section 547(b)(2) "an antecedent debt" is a pre-existing debt that was incurred when the debtor previously obtained a property interest in the consideration provided by the creditor that gave rise to the debt. The consideration may have been a loan or the furnishing of goods or services, but when the debtor obtained the loan, goods or services, the creditor had a claim, matured or unmatured, that it could then assert against the debtor's bankruptcy estate if payment was not made at the time a petition was filed. At that point the debt was "antecedent" for purposes of Section 547(b)(2). See In re Cybermech, Inc., 13 F.3d 818 (4th Cir.1994); In re Futoran, 76 F.3d 265 (9th Cir.1996); In re Energy Coop., Inc., 832 F.2d 997 (7th Cir.1987); In re Gold Coast Seed Co., 751 F.2d 1118 (9th Cir.1985).
Furthermore, we believe that "owed by the debtor when the transfer was made," simply requires that the Court determine that at the time of the transfer there was a recognizable "claim" that was: (1) against the debtor, rather than only against a third party; and (2) that was pre-existing, rather than one which arose simultaneously with the transfer. See In re Western World Funding, Inc., 54 B.R. 470, 478 and In re Virginia-Carolina Fin. Corp., 954 F.2d 193, 197.[6]
V. Conclusion
For the reasons set forth above, we affirm the Bankruptcy Court decision in all respects.
NOTES
[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. Sections 101-1330 and the Federal Rules of Bankruptcy Procedure, Rules XXXX-XXXX.
[2] It appears, however, that because no one from the Debtor actively participated in the Adversary Proceeding, the Trustee was not able to specifically deny the allegation.
[3] Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property 
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made 
(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if 
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
[4] Rule 8013 provides:

On an appeal the district court or bankruptcy appellate panel, may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.
[5] Section 547(c) The Trustee may not avoid under this section a transfer 

(2) to the extent that such transfer was 
(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(C) made according to ordinary business terms;
[6] By adopting this common sense approach and interpretation of Section 547(b)(2) we concur with the Bankruptcy Court in rejecting the interpretation of the Court in In re Brennan, 187 B.R. 135 (Bankr.D.N.J.1995), which concluded that a debt is not "owed" until it is past due.