

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-1999

# US Trustee v. First Jersey Sec.

Precedential or Non-Precedential:

Docket 98-5236,98-5290

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"US Trustee v. First Jersey Sec." (1999). *1999 Decisions.* Paper 153.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/153

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 10, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-5236 and 98-5290

IN RE: FIRST JERSEY SECURITIES, INC.,
       Debtor

UNITED STATES TRUSTEE; SECURITIES
& EXCHANGE COMMISSION

v.

FIRST JERSEY SECURITIES, INC.
(D.C. Civil No. 95-5455)

IN RE: FIRST JERSEY SECURITIES, INC.,
       Debtor

SECURITIES & EXCHANGE COMMISSION

v.

FIRST JERSEY SECURITIES, INC.
(D.C. Civil No. 95-5456)

        Securities & Exchange Commission,
        Appellant, No. 98-5236

        United States Trustee,
        Appellant, No. 98-5290

Appeal from the United States District Court
For the District of New Jersey
(D.C. Civil Nos. 95-5455 and 95-5456)
District Judge: Honorable Mary Little Cooper

Argued March 1, 1999

BEFORE: ALITO and McKEE, Circuit Judges,
and SCHWARTZ, District Judge*

(Opinion filed June 10, 1999)

        Katharine B. Gresham (Argued)
        Securities & Exchange Commission
        450 Fifth Street, N.W.
        Washington, D.C. 20549
         Attorney for Appellant
        No. 98-5236

        Deborah R. Kant (Argued)
        William Kanter
        United States Department of Justice
        Civil Division
        10th & Pennsylvania Avenue, N.W.
        Washington, D.C. 20530
         Attorneys for Appellant
        No. 98-5290

        Walter J. Greenhalgh (Argued)
        Duane, Morris & Heckscher
        One Gateway Center, Suite 1210
        Newark, New Jersey 07102
         Attorney for Appellee

OPINION OF THE COURT

SCHWARTZ, Senior District Judge

This appeal addresses the propriety of the appointment of counsel for a debtor in possession, where the debtor transferred restricted securities to its counsel in payment for pre-petition services on the eve of its filing for bankruptcy. The United States Trustee ("Trustee") and the

_____

*Hon. Murray M. Schwartz, Senior United States District Judge for the District of Delaware, sitting by designation.

2

Securities and Exchange Commission ("SEC") contend the law firm of Robinson, St. John, & Wayne ("RSW") was disqualified from serving as counsel for the debtor, First Jersey Securities, because it held an interest adverse to the debtor's estate by reason of the transfer to it of the restricted securities. The Bankruptcy Court and the United States District Court for the District of New Jersey held the debtor could retain RSW as counsel. Because counsel received a preference under Section 547 of the Bankruptcy Code, 11 U.S.C. S 547, we will reverse and remand.

I.

First Jersey Securities, Inc.1 (the "debtor" or "First Jersey") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 7, 1995. 11 U.S.C. S 101 et seq. This action was prompted after the SEC prevailed in a securities fraud action against First Jersey and its 100% shareholder, Robert Brennan, and obtained an order for them to disgorge $75 million in illegal proceeds. S.E.C. v. First Jersey Securities, Inc., 890 F. Supp. 1185 (S.D.N.Y. 1995), aff 'd in part, rev'd in part, 101 F.3d 1450 (2d Cir. 1996). Obtaining that order left the SEC as the largest unsecured creditor of the debtor.

Concurrent with the filing of the petition, the debtor filed an application pursuant to S 327(a) of the Bankruptcy Code to retain RSW as its counsel. First Jersey owed thefirm approximately $389,000 for legal services rendered prior to the filing for bankruptcy primarily for work performed in the securities fraud litigation.2 On the same day of its

_____

1. First Jersey was a discount broker-dealer specializing in the underwriting, trading, and distribution of low-priced securities. The company was found to have committed securities fraud by selling securities to its customers at prices that included excessive markups, and by failing to disclose to its customers thefirm's control over the respective securities' trading markets.

2. Lead counsel for RSW was Walter Greenhalgh. RSW subsequently disbanded, and its successor firm, St. John & Wayne was substituted as counsel. Later, Duane, Morris & Heckscher was substituted as counsel when Greenhalgh joined that firm. At all times, Greenhalgh has been lead counsel for the debtor in possession.

Chapter 11 filing, the debtor transferred 200,001 shares of unregistered restricted stock in International Thoroughbred Breeders, Inc. ("ITB") to RSW.3 This stock was to be liquidated by RSW, with payments to be made in the following manner: $200,000 as a retainer for representation in the bankruptcy proceedings; $250,000 for payment on firm invoices for representation in the securities fraud litigation, with any excess to be returned to the debtor. The $250,000 was to be considered full payment for the $389,327 due for pre-petition services. The firm waived the remaining pre-petition balance, thereby eliminating itself as a creditor of the debtor. Apparently, shares in ITB were the debtor's only meaningful resource, as its bankruptcy petition listed only $22,367 in other assets. Ultimately, RSW found a buyer for the shares, and transferred all of the ITB stock for $600,003. RSW kept $450,000 and returned the remainder to the debtor. While the transfer of stock was noted in both the debtor's petition and counsel's petition to be retained as counsel, neither party disclosed the payment was made within 90 days of the debtor filing for bankruptcy.

On August 11, 1995, four days after the filing of the petition, the Trustee, joined by the SEC three days later, objected to the appointment of RSW as counsel, arguing the firm was not "disinterested" as is required by the Bankruptcy Code. 11 U.S.C. S 327(a). The Trustee and the SEC (collectively referred to as "SEC") maintained the transfer of ITB restricted stock was a preferential payment, thereby disqualifying RSW from acting as counsel for the debtor because it held an interest adverse to the estate. RSW, in response, submitted a certification asserting the payment was made in the ordinary course of business, was not preferential, and was deemed timely payment. It did not disclose the date of the stock transfer. What occurred in the Bankruptcy Court and District Court is set forth below.

_____

3. Because the ITB shares were unregistered, they could only be sold under an exemption provided by Section 4 of the Securities Act. 15 U.S.C. S 77d.

A. Bankruptcy Court

On August 24, 1995, the Bankruptcy Court held a hearing on the debtor's application to retain RSW as its counsel. The SEC contended the payment of RSW's pre-petition claim was a voidable preference under the Bankruptcy Code, 11 U.S.C. S 547(b),[4] which is a cause for disqualification under Section 327(a).[5] During the hearing, RSW acknowledged the stock transfer took place within the 90 day preference period, but contended it was made in the ordinary course of business, and not made in exchange for an "antecedent debt". Counsel explained the $250,000 payment was for a series of invoices from January through May 1995, as well as for work done in June and July of that year. He stated,

> [T]he normal course of doing business with the debtor for at least the past 12 months and probably going back a year and a half or two years, would be a method where we would generate an invoice, we would then submit a group of invoices after several months, . ... submit that to the debtor, discuss with the debtor a method of payment, and the debtor would make payment on those groups of invoices.

Bankruptcy Docket No. 30, August 24, 1995 Hearing at 31.

The Bankruptcy Court approved the debtor's application to retain RSW from the bench on August 24, 1995 and subsequently issued a written opinion. In re Brennan, 187

---

4. Section 547(b) of the Code permits a trustee to avoid certain pre-bankruptcy transfers as "preferences" where the debtor transfers property to a creditor for an antecedent debt made within 90 days before filing for bankruptcy. In re Molded Acoustical Products, Inc., 18 F.3d 217,
217 (3d Cir. 1994).

5. Section 327(a) provides: "[T]he trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. S 327(a). Pursuant to 11 U.S.C. S 1107, the debtor in possession has the right to seek the employment of professionals subject to S 327(a). If, in fact, the $250,000 payment for pre-petition services was a preference, RSW would not be a "disinterested person" within the meaning of the statute.

5

B.R. 135 (Bankr. D. N.J. 1995). That Court held the SEC did not present a prima facie case that RSW received a voidable preference under Section 547(b) of the Bankruptcy Code. Specifically, the Bankruptcy Court found there was no prima facie showing of a transfer to "satisfy an antecedent debt owed by the debtor before such transfer was made", as is required under S 547(b)(2).6 In re Brennan, 187 B.R. at 153. The Court reasoned a debt is not"owed" within the meaning of the statute until payment is past due, even if the debt is antecedent. It accepted RSW's assertion that the debtor's financial obligation to the firm was not past due, and consequently the payment was deemed timely.

In the alternative, the Court found the transfer of stock, even if a preference, was not a voidable preference because it was a payment made in the ordinary course of business under Section 547(c). If the transfer was incurred and made in the ordinary course of business between the parties, and made according to ordinary business terms, then the transfer cannot be avoided by the debtor's estate. 11 U.S.C. S 547(c)(2).7 In addition, the Court dismissed the SEC's claim that the debtor and counsel failed to disclose adequately the details of the pre-petition transfer of the stock. The Bankruptcy Court concluded, "The U.S. Trustee and the SEC therefore failed to establish that the payment in question is probably an avoidable preference. The mere accusation that it could be avoidable is not sufficient to disqualify Robinson." In re Brennan, 187 B.R. at 154.

B. District Court

The SEC and Trustee appealed the decision of the Bankruptcy Court to the United States District Court for

_____

6. Section 547(b)(2) provides that "the trustee may avoid any transfer of an interest of the debtor in property . . . for or on account of an antecedent debt owed by the debtor before such transfer was made."

7. Section 547(c)(2) provides that a "trustee may not avoid under this section a transfer . . . to the extent that such transfer was -- (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms."

6

the District of New Jersey, contending the Bankruptcy Court erred in finding the law firm was not disqualified under S 327(a). The District Court filed a memorandum and order affirming the Bankruptcy Court's decision. In re First Jersey Securities, Inc., No. 95-5455 (D. N.J.filed April 9, 1998).

The Court agreed with the Bankruptcy Court that the transfer of ITB stock did not constitute a preference under S 547(b), and therefore, RSW should not be disqualified. The District Court also concluded the stock transfer was not made on account of an antecedent debt owed by the debtor before the transfer was made. Finally, the Court declined to address the Bankruptcy Court's conclusion that the stock transfer payment was made in the ordinary course of business.

II.

The District Court exercised jurisdiction under 28 U.S.C. S 158(a) to review the Bankruptcy Court'sfinal order approving the debtor's application for retention of counsel. This Court has jurisdiction under 28 U.S.C. S 158(d) to review the District Court's final order. United States Trustee v. Price Waterhouse, 19 F.3d 138 (3d Cir. 1994).

Our standard of review of a District Court's determination on appeal from a Bankruptcy Court decision has been articulated on numerous occasions. "As an appellate court twice removed from the primary tribunal, we review both the factual and legal determinations of the district court for error." Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-2 (3d Cir. 1981). Our vantage point is identical to that of the District Court, "so we review the bankruptcy court's findings by the standards the district court should employ to determine whether the district court erred in its review." Id. at 102. Accordingly, the Bankruptcy Court's findings of fact are reviewable for clear error. In re Continental Airlines, 125 F.3d 120, 128 (3d Cir. 1997). Legal determinations are subject to plenary review. Id. The Bankruptcy Court's exercise of discretion is reviewed for abuse thereof. In re Engel, 124 F.3d 567, 571 (3d Cir. 1997).

7

III.

The SEC urges this Court to reverse the District Court's decision approving the retention of RSW as counsel for the debtor. It argues the Court erred in finding the stock transfer was not a voidable preference under 11 U.S.C. S 547, and that error led it to conclude RSW was qualified to serve as counsel to the debtor under 11 U.S.C.S 327. The SEC also urges the transfer of the ITB restricted stock was not made in the ordinary course of business as outlined in 11 U.S.C. S 547(c)(2). Finally, the SEC asserts the District Court erred in finding RSW's disclosures concerning the stock transfer payments were sufficient under S 327(a). Because we conclude the stock transfer was a preferential payment not made in the ordinary course of business, we need not address whether RSW adequately disclosed the stock payments to the Bankruptcy Court.

A. Stock Transfer as Preferential Payment

Section 327(a) of the Bankruptcy Code provides for the trustee (or the debtor in possession), with the Court's approval, to employ attorneys "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. S 327(a); 11 U.S.C. S1107. In order for counsel to be retained, "counsel must `not hold or represent an interest adverse to the estate' and must be a `disinterested person.' " In re BH&P Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D. N.J. 1988)).

A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. 11 U.S.C. S 101(14)(e). The standards regarding adverse interests underS 327(a) are outlined in In Re Marvel Entertainment Group, Inc., 140 F.3d 463, 476 (3d Cir. 1998). In that case, we held:

> (1) Section 327(a), as well as 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest;

> (2) the district court may within its discretion-- pursuant to S 327(a) and consistent with 327(c) --

8

disqualify an attorney who has a potential conflict of interest and

(3) the district court may not disqualify an attorney on the appearance of conflict alone.

Id. A Court may consider an interest adverse to the estate when counsel has "a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant." In re Caldor, Inc., 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996) (where Trustee objected to retention of counsel by official committee of unsecured creditors in Chapter 11 case); In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bank. D.N.J. 1988) (where Bankruptcy Court held law firm held actual conflict of interest in representing both debtors in possession).

In summary, S 327(a) mandates disqualification when there is an actual conflict of interest, allows for it when there is a potential conflict, and precludes it based solely on an appearance of conflict. In the situation where the debtor in possession seeks to retain counsel, as is the case here, the Code provides, "[A] person is not disqualified for employment under S 327 of this title by a debtor in possession solely because of such person's employment by representation of the debtor before the commencement of the case." 11 U.S.C. S 1107(b). Where there is an actual conflict of interest, however, disqualification is mandatory. In re Marvel Entertainment Group, 140 F.3d at 476. A preferential transfer to RSW would constitute an actual conflict of interest between counsel and the debtor, and would require the firm's disqualification. In re BH&P, 949 F.2d at 1316–1317.

The Bankruptcy Code's avoidable preference provision, 11 U.S.C. S 547(b), allows a bankruptcy trustee to recover certain transfers a debtor made prior to filing a petition in bankruptcy. The trustee must show that the transfer was:

1) to or for the benefit of a creditor;

2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

3) made while the debtor was insolvent;

9

    4) made -- on or within 90 days before the date of the
    filing of the petition; . . .

    5) that enables such creditor to receive more than
    such creditor would receive if --

    A) the case were a case under Chapter 7 of this ti tle;

    B) the transfer had not been made; and

    C) such creditor received payment of such debt to
    the extent provided by the provisions of this title

11 U.S.C. S 547(c)(2). The Bankruptcy Court and District
Court held the SEC did not make a prima facie showing the
stock transfer likely satisfied the requirement that the
transfer be "for or on account of an antecedent debt owed
by the debtor before such transfer was made." 11 U.S.C.
S 547(b)(2). The Courts below found all other elements of
Section 547(b) were established, a conclusion with which
we are in accord.

The Bankruptcy Court reasoned that not only must the
debt be antecedent, but also the payment of a debt must be
past due, as a prerequisite for establishing a voidable
preference under S 547(b)(2). RSW certified the transfer of
the securities was in the ordinary course of business
dealings between the two parties, and was deemed timely
payment. It further represented the invoices submitted by
the firm did not constitute a final bill of an amount owed to
the firm. Rather, the firm would negotiate with the debtor
over several months worth of invoices, and adjust the bill
accordingly. An invoice was not finalized until after
negotiations. With respect to the final bill with First Jersey,
the debtor agreed to pay $250,000 for legal services
rendered from January to July 1995 almost simultaneously
with the conclusion of negotiations over the final bill. The
parties agreed the $250,000 was in settlement of the
invoices presented by RSW for legal work performed from
January to May 1995 (which totaled $314,327), as well as
for work performed in June and July 1995 for which RSW
had not yet generated an invoice ($75,000). RSW thus
argues the payment was made before the debt was actually
past due. The Bankruptcy Court agreed, reasoning the debt
was not due prior to the time the payment was made. The

10

District Court concurred with this conclusion under the same legal reasoning.

The District Court's legal interpretation of S 547(b)(2) is reviewed de novo. Under the language of the statute, in order to constitute a preferential payment, First Jersey must have owed an antecedent "debt" to RSW, and that debt must have been incurred "before the transfer was made." 11 U.S.C. S 547(b)(2). The Bankruptcy Code defines a debt as a "liability on a claim." 11 U.S.C.S 101(12). In turn, the Code defines a claim broadly. A "claim" means: (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. S 101(5). Under this broad definition of claim, "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." Senate Report at 22, 1978 U.S. Code Cong. & Admin. News 5787, 5808. In addition, as debt is defined as a liability on a claim, it is coextensive with the definition of a claim, and both are construed broadly. Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). It follows "when a creditor has a claim against a debtor -- even if the claim is unliquidated, unfixed, or contingent -- the debtor has incurred a debt to the creditor." In re Energy Cooperative, Inc., 832 F.2d 997, 1001 (7th Cir. 1987).

The SEC contends First Jersey incurred a debt to RSW when the law firm performed legal services on the debtor's behalf. We agree. Courts which have considered this issue have concluded, consistent with the statutory definitions, that an antecedent debt owed by the debtor occurs when a right to payment arises -- even if the claim is not fixed, liquidated, or matured. See 11 U.S.C. S 101(5); In re Bennett Funding Group, Inc., 220 B.R. 739, 742 (2d Cir. B.A.P. 1998) (debt occurs "when the debtor previously obtained a property interest in the consideration provided by the creditor that gave rise to the debt"). The right to payment generally arises when the debtor obtains the goods or services. See, e.g., Id; In re Futoran, 76 F.3d 265, 267 (9th Cir. 1996); In re Cybermech, Inc., 13 F.3d 818, 821 (4th Cir. 1994); In re Energy Co-op, Inc., 832 F.2d at 1001.

11

Under this reasoning, RSW had a claim at the time it performed legal services for First Jersey. Its claim was "antecedent" for purposes of Section 547(b)(2). The payment of $250,000 from the sale of ITB stock was to settle the debt owed by First Jersey for past legal services rendered between January and July 1995. We agree with our sister circuits and other courts that legal claims arise when the legal services are performed, not when the bill itself is presented to the client. See, e.g., In re Florence Tanners, Inc., 209 B.R. 439, 447 (Bankr. E.D. Mich. 1997); In re Investment Bankers, Inc., 136 B.R. 1008, 1018 (D. Colo. 1989), aff'd, 4 F.3d 1556 (10th Cir. 1993).

In In re Florence Tanners, an attorney claimed he did not receive a preferential transfer because he received payment before he had sent an invoice for his services. The Court disagreed, and held "a debt for legal services arises when the services are performed, not when the subsequent invoice is issued." 209 B.R. at 447. Similarly, the Bankruptcy Appellate Panel in In re Bennett Funding Group concluded that, since a law firm which provided legal services "had a claim, mature or unmatured, that it could then assert against a debtor's bankruptcy estate if payment was not made at the time a petition was filed . . . the debt was `antecedent' for purposes of Section 547(b)(2)." 220 B.R. 739, 742 (B.A.P. 2d Cir. 1998).

The policies underlying the preference section in the bankruptcy statute cry out for the conclusion that a debt arises when legal services are provided, not when a law firm issues an invoice. The overriding intent in enacting S 547(b) was to promote equal distribution among a debtor's creditors. The preference section discourages creditors from racing to the courthouse to dismember the debtor during its slide into bankruptcy, and it furthers the policy of equal distribution among similarly situated creditors. 5 Collier on Bankruptcy, S 547-9; 1978 Code Cong. & Admin. News 5787, 6138.

The Bankruptcy Court's reasoning that a debt is not owed until payment is past due is not found in the preference statute, 11 U.S.C. S 547. Its absence is readily understandable. If the Bankruptcy Court's conclusions were permitted to stand, the preference provision of the

12

Bankruptcy Code would be largely vitiated. The Bankruptcy Court's judicial gloss would allow creditors to retain a pre-petition payment simply by asserting that the payment was "timely," as was done by RSW. Pronouncing a payment is "timely" does not make it so. Moreover, such an approach would lead to inequality among similarly situated creditors, and allow for both strategic behavior and collusion by creditors to secure preferential treatment prior to a debtor filing its petition. This approach would "leave to the creditor the discretion to determine the date the obligation was incurred, creating the possibility not only of inequality of treatment of similarly-situated creditors (depending on the vagaries of their billing practices), but also the opportunity for a particular creditor, who foresees that his debtor is approaching bankruptcy, to secure preferential treatment for himself by the timing of the bill." Matter of Emerald Oil Co., 695 F.2d 833, 837 (5th Cir. 1983).

In this case, the stock transfer resulted in a large diminution of the value of the debtor's estate, and a serious depletion of assets of the estate available to other creditors. Similarly situated creditors were not treated equally. Moreover, RSW, as the debtor's counsel, was in a unique position to secure preferential treatment for itself-- as it knew the debtor was going to file for bankruptcy in the imminent future. First Jersey's payment to RSW depleted the estate of its only significant asset that would have been available to its other creditors. This is the type of payment Congress intended the preference section to reach. We have no trouble concluding the stock transfer was a preference under Section 547 of the Bankruptcy Code. As such, RSW had an actual conflict with the debtor and was therefore disqualified from serving as counsel under S 327, unless payment to it was in the ordinary course of business.

B. Payment in the Ordinary Course of Business

Even if a payment is considered a preference under Section 547(b), it may not be subject to avoidance if it was made in the ordinary course of business, as defined in 11 U.S.C. S 547(c). The purpose of Section 547(c) is to leave undisturbed normal financial relations between a debtor and its creditors, even as a company approaches bankruptcy. It protects "recurring, customary credit

13

transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." 5 Collier on Bankruptcy, 547-47. We conclude, however, that the debtor's stock transfer to RSW in this case was not made in the ordinary course of business dealings between the two parties, nor was it made according to ordinary business terms.

In reaching the opposite conclusion, the Bankruptcy Court concluded the stock transfer was made in the ordinary course of business, and was thus acceptable even if one concluded the payment constituted a preferential transfer under S 547(b). The Court accepted RSW's assertion that its ordinary billing procedure with First Jersey was to submit a number of invoices after several months, and then negotiate the amount and method of payment. Counsel explained, "we would go to the debtor with the invoices in hand, submit them to the client, discuss with the client whether the bills should be adjusted, and in most cases they were adjusted downward, and then work out some sort of a payment on that particular group of invoices." Bankruptcy Docket No. 30 at 32.

A trustee may not avoid a preferential transfer to the extent such transfer was: "(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and transferee; (B) made in the ordinary course of business or financial affairs of the debtor and transferee; and (C) made according to ordinary business terms." 11 U.S.C. S 547(c)(2). The burden is on the transferee to satisfy each statutory element by a preponderance of the evidence. 11 U.S.C. S 547(g); J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp., 891 F.2d 66, 69-70 (3d Cir. 1989).

It is undisputed the transfer of stock satisfies S 547(c)(2)(A) -- the debt was incurred for legal services provided by RSW to First Jersey in the normal course of business. The conflict arises as to the other two elements. The term "ordinary" is not defined in the bankruptcy statute. J.P. Fyfe teaches the determination of what is "in the ordinary course of business" is subjective, calling for the Court to consider whether the transfer was ordinary as

14

between the debtor and the creditor. Factors such as timing, the amount and manner in which a transaction was paid are considered relevant. In re Yurika Foods Corp., 888 F.2d 42, 45 (6th Cir. 1989).

Employing these criteria, we conclude the payment was not made in the ordinary course of business. The timing of the payment to RSW is clearly suspect. The transfer of stock was made on the day the debtor filed its petition for bankruptcy. RSW did not show that the payment date fit a particular practice between the parties. Rather, all the record shows is that First Jersey made periodic payments during 1994 and 1995. These payments consisted of:

```
10/28/94  $300,000
12/07/94  $150,000
12/22/94  $150,000
02/10/95  $150,000
03/24/95  $150,000
05/31/95  $150,000
```

We merely note the payment of $250,000 on August 7, 1995 deviates from the pattern of $150,000 payments from December 1994 to May 1995. However, we are very troubled by the absence in the record of any explanation for why the payment was made on the eve of the debtor'sfiling for bankruptcy. As First Jersey's counsel in the securities litigation, RSW had to know of the debtor's precarious financial position when it accepted restricted securities in lieu of cash payment because RSW prepared the bankruptcy petition filed on the same day as the stock was transferred to it.

The RSW firm also failed to produce any evidence that the payment of legal bills by transfer of restricted stock was in the ordinary course of business between the parties. RSW did not assert it had ever before received payment in the form of restricted securities. The stock in question was unregistered, and could not be sold publicly. In fact, RSW needed to find a sophisticated buyer for the securities -- and the shares were not sold until October 19, 1995. It defies reason that the Robinson firm would accept payment in an illiquid asset unless it knew the debtor was in serious financial difficulties and could not pay otherwise. The

15

manner and timing of the payment in the currency of restricted ITB stock suggests the transfer was not made in the ordinary course of business between the parties.

Moreover, the payment was not made "according to ordinary business terms", as is required by S 547(c)(2)(c). This phrase has been interpreted as encompassing "the practices in which firms similar in some general way to the creditor in question engage." In re Molded Acoustical Products, Inc., 18 F.3d 217, 224 (3d Cir. 1994)."Only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C." Id., (citing Matter of Tolona Pizza Prods. Corp., 3 F.3d 1029, 1033 (7th Cir. 1993)). This Court emphasized, moreover, that "the more cemented [as measured by duration] the pre-insolvency relationship between the debtor and the creditor, the more the creditor will be allowed to vary its credit terms from the industry norm yet remain within the safe harbor of S 547(c)(2)." Id. at 225.

While this test is deferential, it is not non-existent. The general practice of law firms is to receive cash in return for services, not restricted securities. See, e.g., In re Florence Tanners, Inc., 209 B.R. 439, 448 (Bankr. E.D. Mich 1997) (questioning "whether in the ordinary course of the legal business, clients pay lawyers with merchandise"). While law firms have begun to accept equity positions as payment from "start-up" companies with strong growth potential, the reasoning in these situations is the expectation by the law firm that the stock of the client will appreciate in value. In contrast, here the restricted stock is not of a client with growth potential, but of a third party. Moreover, the record reflects it was common practice for First Jersey to pay RSW only in cash. In fact, up until the day the Chapter 11 petition was filed, there is no evidence in the record that First Jersey ever transferred securities, much less restricted securities, to RSW as payment for legal services.

Finally, it very much appears that on August 7, 1997, First Jersey recognized its need for counsel to shepherd it through the chapter 11 proceedings. The obvious choice was RSW since it had continuously represented First Jersey as its legal troubles mounted. But there was a problem.

16

First Jersey owed RSW a substantial amount of money. Turning over the ITB stock to RSW was the only solution, especially since RSW represented ITB in the past, and presumably was familiar with the company. Be that as it may, payment of legal bills in restricted stock as a prelude to filing a bankruptcy Chapter 11 petition can hardly be construed as a payment "made according to ordinary business terms."

Viewed in its totality, it is clear this payment was not made in the ordinary course of business. Accordingly, the preferential payment was a preference, creating an actual conflict of interest, and thus, disqualifying RSW as counsel for the debtor.8

IV. Conclusion

For the reasons set forth above, we find the District Court erred in holding that the stock transfer was not a preference under 11 U.S.C. S 547. The stock transfer created an actual conflict of interest, and therefore disqualification is mandatory. In addition, wefind the Bankruptcy Court erred in finding the transfer was exempt under S 547(c)(2) as a payment made in the ordinary course of business.

Accordingly, we will reverse the District Court's order and direct the District Court to remand to the Bankruptcy Court with instructions to disqualify RSW and successor firms as counsel for First Jersey, and to take such further action as is consistent with this opinion.9

_____

8. Because we conclude the $250,000 payment constituted a preference, and counsel is disqualified, we do not reach the question of whether the debtor and RSW adequately disclosed information in RSW's application for employment as required by Rule 2014(a) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. S 327.

9. We note the Bankruptcy Court warned RSW at the hearing that if the transfer is avoided as to the payment of the pre-petition debt, "[RSW] is subject not only to disgorgement of the preference, but also to the possible denial or reduction of compensation under Code section 328(c) as well." In re Brennan, 187 B.R. at 154.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit